1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MIRABEL ORTIZ,                              No. C 13-00460 SI

12              Plaintiff,                       **ORDER GRANTING IN PART AND**
                                                 **DENYING IN PART DEFENDANTS'**
13      v.                                       **MOTION TO DISMISS FIRST**
                                                 **AMENDED COMPLAINT**
14   THE PERMANENTE MEDICAL GROUP, INC.,
     and CINDY LAMDIN,
15
16              Defendants.
     _____/

17

18          Currently before the Court is defendants' motion to dismiss plaintiff's first amended complaint,

19   which is scheduled to be heard on April 26, 2013.  Pursuant to Civil Local Rule 7-1(b), the Court finds

20   this matter appropriate for resolution without oral argument and hereby VACATES the hearing.  Having

21   considered the parties' arguments, and for good cause appearing, the Court hereby GRANTS IN PART

     and DENIES IN PART defendants' motion.
22

23
                                            **BACKGROUND**
24
     **1.     Factual Background**
25
            In September 1999, plaintiff Mirabel Ortiz began working as a medical assistant for defendant
26
     The Permanente Medical Group, Inc. ("TPMG"), a California corporation that contracts with hospitals,
27
     including Kaiser Foundation Health Plan, Inc., to provide medical and related professional services to
28
     hospital members.  *See* Ntc. of Removal, ¶ 6, Ex A (First Amended Complaint ("FAC")), at  ¶¶ 1, 7.

United States District Court
For the Northern District of California

1  Defendant Cindy Lambdin was the Manager of Orthopedics at TPMG while plaintiff was employed

2  there.  FAC ¶ 2.  As a condition of her employment, and through her membership in the United

3  Healthcare Workers–West union ("SIEU–UHW"), plaintiff entered into a written collective bargaining

4  agreement (the "CBA") with defendants wherein the parties expressly agreed that defendants would

5  carry out the terms of the CBA in good faith and could only terminate plaintiff if her work was

6  unsatisfactory, or for other "just cause."  *Id.* at ¶¶ 10, 11, 16 (citing Article XXI, Section 1, paragraph

7  1069 of the CBA: "No employee shall be disciplined or discharged without just cause.").

8  Plaintiff asserts that her work at TPMG was at all times "competent and satisfactory."  *Id.* at

9  ¶ 12.  She alleges that despite the terms of the CBA, in January 2011 defendants fired her, using the

10  pretext that she had committed "personal improprieties," and that defendants did so prior to imposing

11  any "progressive discipline."  *Id.* at ¶¶ 13, 20, 52.[1]  She alleges that her termination was in retaliation

12  for complaints she had made to management of the Orthopedics department, expressing concern that

13  it was being run "in such a way to be harmful to patients."  *Id.* at ¶¶ 26, 51.  Plaintiff alleges that she

14  "was the only person to be terminated though more than 10 other employees were accused of the same

15  wrong-doing." *Id.* at ¶ 17.

16

17  **2.    Procedural History**

18  On May 29, 2012, plaintiff filed this lawsuit in San Mateo County Superior Court.  *See Mirabel*

19  *Ortiz v. Permanente Medical Group, Inc., Cindy Lambdin, and Does 1 through 20, inclusive*, No. CIV

20  514192. Ntc. of Removal, ¶ 1. On December 17, 2012, plaintiff filed a FAC in state court.  Defendants

21  returned with a signed notice of acknowledgment of receipt on January 2, 2013.  *Id.*

22  Plaintiff's complaint rests upon alleged state law violations and an alleged breach of the CBA's

23  requirement that plaintiff be fired only upon a showing of "just cause," and not in retaliation for

24  expressing complaints about work conditions to her employer.  *See generally* FAC.  Specifically, she

25  alleges claims against defendant TPMG for: (1) Breach of an express contract of continued employment;

26  (2) Breach of an implied covenant of good faith and fair dealing ; (3) Negligent infliction of emotional

27

28  ───────────────

[1] The CBA states that "[i]t is the Employer's intent normally to make use of progressive discipline in accordance with established practices and policy."  FAC ¶ 13.

distress; (4) Wrongful discharge in violation of public policy; (5) Respondeat superior liability; (6) Intentional interference with prospective economic advantage; (7) Negligent interference with prospective economic advantage; (8) Retaliation for protesting unsafe or unhealthy working conditions); and (9) Intentional infliction of emotional distress.  *See* FAC, at 3-15.  Plaintiff asserts the Third, Sixth, and Seventh Claims against defendant Lambdin as well.  *See id.*[2]

On February 1, 2013, defendants filed a timely notice of removal with this Court on the ground that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, premised on an alleged "breach of a collective bargaining agreement . . . between a union and employer in the private-sector under [§] 301 of the Labor Management Relations Board ("LMRA"), 29 U.S.C. § 185."[3]  *See* Ntc. of Removal, ¶¶ 4-6; 28 U.S.C. § 1446(b) (requiring a notice of removal to federal court be filed within 30 days of signing the acknowledgment of receipt of a summons and complaint); 28 U.S.C. § 1441(a) (removal based upon original federal court jurisdiction); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (federal court has jurisdiction over claims for breach of CBAs under § 301 of the LMRA regardless of whether the complaint specifically refers to the § 301, so long as a claim reasonably appears to arise under § 301).[4]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."

---

[2] Plaintiff has not opposed defendants' motion to dismiss the Second, Fifth, Sixth, and Seventh claims.  *See* Opp'n, at 7.  Therefore, the Court GRANTS defendants' motion to dismiss these claims.

[3] The LMRA provides in relevant part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."  28 U.S.C. § 185(a).

[4] Plaintiff does not challenge the propriety of the removal, and the Court finds that it has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 1331.

United States District Court
For the Northern District of California

1    *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  While courts do not require "heightened fact

2    pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the

3    speculative level." *Twombly*, 550 U.S. at 544, 555.

4         In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court

5    must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the

6    plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the

7    court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions

8    of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

9         If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The

10   Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request

11   to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

12   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

13   quotation marks omitted).

14

15                                        **DISCUSSION**

16   **1.    Claim for Breach of an Express Contract of Continued Employment**

17        Plaintiff's First claim in the FAC alleges that plaintiff entered into the CBA, and that defendants

18   breached the CBA when they "fired [her without just cause] . . . under the pretext that she had

19   committed personal improprieties, among other things," and that defendants "failed to employ

20   progressive discipline in accordance with its' [sic] established practices and policies." *See* FAC ¶¶ 10,

21   13.

22        Defendants contend that because this claim involves a breach of a collective bargaining

23   agreement between TPMG and plaintiff, a unionized employee, it is therefore subject to § 301 of the

24   LMRA, 29 U.S.C. § 185(a). *See* Motion, at 3.  As such, according to defendants, plaintiff was required

25   to – but failed to – allege exhaustion of the CBA's available administrative remedies. *See id.*  The Court

26   agrees.

27         Although artfully pled as a state law claim, plaintiff's claim for breach of a labor contract

28   between TPMG and plaintiff's union is properly characterized as a federal claim for breach of the CBA.

United States District Court
For the Northern District of California

1    Accordingly, the Court has subject matter jurisdiction pursuant to, and must analyze the claim under,

2    § 301 of the LMRA, 29 U.S.C. § 185(a).  *See supra*; *see also Fristo*, 615 F.2d at 1212 (noting that mere

3    omission of reference to LMRA section 301 in the complaint does not preclude federal subject matter

4    jurisdiction); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

5        "As a general rule in cases to which federal law applies, federal labor policy requires that

6    individual employees wishing to assert contract grievances must attempt use of the contract grievance

7    procedures agreed upon by employer and union as the mode of redress."  *Republic Steel Corp. v.*

8    *Maddox*, 379, U.S. 650, 652 (1965); *Beriault v. Local 40, Super Cargoes & Checkers of Intern.*

9    *Longshoremen's & Warehousemen's Union*, 501 F.2d 258, 262-63 (9th Cir. 1974).  With limited

10   exceptions, none of which are asserted here, an employee's failure to exhaust is fatal to stating an

11   actionable breach of contract claim arising under § 301.  *See Beriault*, 501 F.2d at 262.

12       Here, Article XXIII of the CBA provides grievance and arbitration procedures for "every dispute

13   concerning interpretation and application of [the CBA] . . . All such disputes shall be subject to the

14   grievance procedure."  Defs.' Request for Judicial Notice ("RJN"), Ex. A, at 126.[5]  The CBA provides

15   a three-step grievance procedure, constituting first an informal attempt to resolve the grievance followed

16   by two more formal appeals.  Should the grievance remain unresolved, the aggrieved party can appeal

17   to the assigned Director of Labor Relations to initiate arbitration.  *Id.* at 127-29.

18       Although not alleged in the FAC, plaintiff asserts in her opposition that she "went through the

19   three steps of the grievance process" per the CBA, but that her "union failed to pursue arbitration of the

20   grievance."  *See* Opp'n (Dkt. 18) at 1.  Because the FAC is devoid of any factual allegations

21   demonstrating that plaintiff made an effort to exhaust available administrative remedies under the CBA,

22   the claim must be dismissed.

23

24

25

---

26       [5] Defendants request that the Court take judicial notice of the CBA, *see* Request for Judicial

27   Notice ("RJN") (Dkt. 13), at 1-2; *see also* Decl. Mary Jo Williams ¶¶ 1-2, Ex. A.  *See* Fed. R. Evid. 201.
Plaintiff expressly refers to and relies upon the CBA in the FAC, and has not questioned its authenticity

28   or objected to the RJN.  *See id.*; *Stone v. Writer's Guild of Am. West*, 101 F.3d 1312, 1313-14 (9th Cir.
1996) (taking judicial notice of the collective bargaining agreement referred to in plaintiff's complaint).
Therefore, the Court GRANTS defendants' request.

**United States District Court**
For the Northern District of California

1    Accordingly, defendants' motion to dismiss plaintiff's First claim is GRANTED, and the claim

2  is DISMISSED WITH LEAVE TO AMEND.[6]

3

4   **2.      Claim for Retaliation for Protesting Unsafe Work Conditions**

5    Plaintiff's Eighth claim against TPMG alleges a violation of California Labor Code section 6310,

6  and the public policy on which it is based, for firing plaintiff in retaliation for making complaints about

7  the unhealthy and unsafe work conditions. *See* FAC ¶ 53. Defendants move to dismiss this claim on

8  the ground that (1) section 6310 only prohibits firing an employee in retaliation for making *formal*

9  complaints to the California Division of Labor Standards Enforcement, and according to defendants,

10  plaintiff only made informal complaints to her employer; and (2) plaintiff failed to exhaust available

11  administrative remedies as required by California Labor Code section 98.7. *See* Motion, at 5; Reply,

12  at 5.

13    Section 6310 provides:

14    (a) No person shall discharge or in any manner discriminate against any employee
      because  the employee has done any of the following:

15
      (1) Made any oral or written complaint to the division, other governmental
16    agencies having statutory responsibility for or assisting the division with
      reference to employee safety or health, *his or her employer*, or his or her
17    representative.

18  Cal. Labor Code § 6310(a)(1) (2012) (emphasis added).

19    First, defendants contend that, pursuant to *Division of Labor Law Enforcement v. Sampson*, 64

20  Cal.App.3d 893, 896-97 (1976), section 6310 does not protect against a retaliatory discharge made

21  following an employee's private, informal complaints to her employer. The Court disagrees. *Sampson*

22  did indeed hold that section 6310 only concerns retaliation for lodging complaints with "the  division"

23  – there, the Department of Industrial Relations. *Sampson*, 64 Cal.App.3d at 896-98. When *Sampson*

24  was decided, however, section 6310 only prohibited the discharge of an employee who "made any . .

25

26    [6] Defendants assert for the first time in their Reply that plaintiff's First claim constitutes a
    "hybrid § 301/fair representation claim" subject to a six month statute of limitations period. Reply, at
27  3-4. They argue that because plaintiff was terminated in January 2011, and she did not file her original
    complaint until May 2012, her claim exceeds the statutory period and is therefore barred as untimely.
28  Should plaintiff choose to amend her complaint, she must allege that she exhausted the available
    administrative remedies under the CBA, and that she did so and then filed her complaint in a timely
    manner.

United States District Court
For the Northern District of California

. complaint . . . relating to his rights." Former Cal. Labor Code § 6310(a) (1973). Following the decision in *Sampson*, the California state legislature amended section 6310 to expressly cover complaints made to an employer. *See Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 299 (1982) (citing a 1977 amendment to section 6310, Stats. 1977, ch. 460, § 1, p. 1515, as expressly covering complaints made to the division, and "other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, *his employer*, or his representative . . . .") (emphasis added).[7]

The FAC alleges that plaintiff "protested about the unsafe and unhealthy working conditions at her place of employment, including complaints that defendant LAMBDIN was running the Orthopedics department in such a way as to be harmful to patients, among other things." FAC ¶ 51. The Court concludes that plaintiff has alleged facts "that add up to more than a sheer possibility" that defendants discharged plaintiff in retaliation for making complaints in violation of section 6310. *See Iqbal*, 566 U.S. at 678.

Second, defendants contend – for the first time in their Reply – that plaintiff's Eighth claim premised on section 6310 fails because plaintiff failed to exhaust her administrative remedies as required by California Labor Code section 98.7. Although California state and federal courts have reached different conclusions regarding the extent to which a plaintiff must first exhaust administrative remedies prior to bringing a claim for a violation of the Labor Code, the Court finds it inappropriate to require exhaustion in this case.

Section 98.7 provides in relevant part: "Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner *may* file a complaint with the division within six months after the occurrence of the violation." Cal. Labor Code § 98.7(a) (emphasis added). Subdivision (d) provides that if the Labor Commissioner "determines no violation has occurred, he or she shall notify the complainant and respondent and shall dismiss the complaint . . . . *The complainant may, after notification of the Labor Commissioner's determination to dismiss the complaint, bring an action in an appropriate court . . . .*"

---

[7] Section 6310 was amended again in 1989, but these amendments have no effect on the interpretation of the provision for purposes of deciding this motion.

**United States District Court**
For the Northern District of California

*Id.* at § 98.7(d) (emphasis added).  Finally, subdivision (f) states that "*[t]he rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other law*." *Id.* at § 98.7(f) (emphasis added).  From its plain language, the Court concludes that section 98.7 "merely provides an employee with an additional remedy, which the employee may choose to pursue." *See Lloyd v. County of Los Angeles*, 172 Cal.App.4th 320, 331 (2009).

Despite section 98.7's permissive language, a number of California state and federal courts have required exhaustion with the Labor Commissioner prior to seeking a judicial remedy.  *See, e.g*, *Campbell v. Regents of Univ. of California*, 35 Cal.4th 311, 321, 333-34 (2005) (holding generally that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act" without explicitly addressing exhaustion before the Labor Commissioner under section 98.7); *Ferretti v. Pfizer Inc.*, 855 F.Supp.2d 1017, 1024 (N.D. Cal. 2012) (district courts have "uniformly" held since *Campbell* that exhaustion to the Labor Commissioner is required under section 98.7); *Ramirez v. County of Marin*, C 10-02889 WHA, 2011 WL 5080145 (N.D. Cal. Oct. 25, 2011) (exhaustion of § 6310 claims required).

Other courts, however, have concluded that *Campbell*'s reasoning for requiring administrative exhaustion did not apply.  *See Lloyd*, 172 Cal.App.4th at 332 (holding there to be "no reason . . . to impose an administrative exhaustion requirement on plaintiffs seeking to sue for Labor Code violations"); *Creighton v. City of Livingston*, CV-F-08-1507 OWW/SMS, 2009 WL 3246825, at *12 (E.D. Cal. Oct. 7, 2009) ("No California decision requires as a prerequisite to suit for statutory violation of the Labor Code exhaustion of administrative remedies before the Labor Commissioner."); *Turner v. City & County of San Francisco*, C 11-1427 EMC, 2012 WL 3763635, at *7-*11 (N.D. Cal. Aug. 29, 2012) (finding *Lloyd* and *Creighton*'s reasoning persuasive); *Thompson v. Genon Energy Services, LLC*, C 13-0187 TEH, 2013 WL 968224, *3-*4 (N.D. Cal. March 12, 2013).

The Court finds that the permissive language of section 98.7, coupled with the reasoning of the decisions in *Lloyd*, *Creighton*, *Turner*, and *Thompson*, warrants a conclusion that exhaustion of administrative remedies to the Labor Commissioner is not required under section 98.7.

Accordingly, defendants' motion to dismiss plaintiff's Eighth claim is DENIED.

**United States District Court**
For the Northern District of California

3.      **Plaintiff's Remaining Claims**

Defendants move to dismiss the remaining claims – the Third, Fourth, and Ninth claims – on the ground that they are all preempted by § 301 of the LMRA because they stem from plaintiff's alleged wrongful termination under the CBA. *See* Motion, at 6.

Plaintiff's Third claim is for negligent infliction of emotional distress ("NIED") arising from defendants' "failure to exercise due care in breaching the [CBA]." FAC ¶ 24. Plaintiff's Fourth claim is for wrongful discharge in violation of public policy, arising from plaintiff's discharge following complaints she had made regarding the health and safety of the work conditions. *Id.* at ¶ 26. Plaintiff alleges that the Fourth claim constitutes "discrimination in violation of [California] Labor Code section 6301[8] and the California Constitution . . . ." *Id.* at ¶ 27. Finally, plaintiff's Ninth claim alleges intentional infliction of emotional distress ("IIED") stemming from the alleged retaliatory discharge in violation of section 6310 and the CBA. *Id.* at ¶ 56.

In determining whether § 301 preempts state law, the "essential inquiry is the intent of Congress in enacting the federal statute." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 738 (1985). The Supreme Court has held that the preemptive force of § 301 "is so powerful as to displace entirely any state cause of action for violation of a collective bargaining agreement." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). Preemption under § 301 extends both to claims founded directly on rights created by the collective bargaining agreement, as well as claims which are "substantially dependent on analysis of a collective bargaining agreement." *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 1987). Although its scope is substantial, § 301 does not preempt every suit concerning employment. *Miller v. AT&T Network Systems*, 850 F.2d 543, 545 (9th Cir. 1988). The relevant analysis for determining whether § 301 preempts state law is "whether the California tort action as applied here confers nonnegotiable[9] state-law rights on employers or employees independent of any rights established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 545-46 (citing

---

[8] The Court assumes that plaintiff intends to rely on section 6310, the section that relates to retaliatory discharge.

[9] "Nonnegotiable" is interpreted to mean that a party cannot waive, alienate, or alter the right through private agreement. *Miller*, 850 F.2d at 546.

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Congress did not intend for § 301 to preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers*, 471 U.S. at 212.

### A.       Plaintiff's Third Claim for Negligent Infliction of Emotional Distress

Plaintiff's Third claim for NIED relies exclusively on defendants' failure to exercise due care in abiding by the terms of the CBA. FAC ¶ 24. The facts alleged in support of this claim make no reference to any nonnegotiable state law right independent of any right established by, or inferred from, the CBA. *See Paige*, 826 F.2d at 863. Rather, the legal basis on which this claim hinges is an interpretation of the CBA as to whether defendants had "just cause" for firing plaintiff. Therefore, plaintiff's Third claim is preempted by § 301 of the LMRA.

Accordingly, defendants' motion to dismiss plaintiff's Third claim GRANTED, and the claim is DISMISSED WITH PREJUDICE.

### B.       Plaintiff's Fourth Claim for Wrongful Discharge in Violation of Public Policy

Plaintiff's Fourth claim, commonly referred to as a *Tameny* claim, is premised on an alleged wrongful discharge that violates both the "just cause" provision of the CBA as well as California Labor Code section 6310 and the public policy on which it is based – to avoid retaliatory firing for making complaints related to workplace safety. *See Miklosky v. Regents of Univ. of California*, 44 Cal.4th 876, 898-900 (2008) (noting that if an employer terminates an employment relationship for a reason that contravenes some fundamental public policy, then the employer breaches a general duty imposed by law upon all employers and the employee's remedy therefore sounds in tort).

Defendants' argument that § 301 preempts plaintiff's Fourth claim misses the point. While it may be true that the allegations in support of this claim implicate the terms of the CBA, it is also true that the allegations independently implicate conduct prohibited by section 6310. The proper inquiry for § 301 preemption is not whether there is any overlap between allegations that are preempted and those that are not, but rather "whether the California tort action as applied here confers nonnegotiable state-law rights on employers or employees independent of any rights established by contract, or, instead,

United States District Court
For the Northern District of California

whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Miller*, 850, F.2d at 863.  Section 6310 prohibits retaliatory discharge for making complaints to an employer. *See* Cal. Labor Code § 6310.  Plaintiff's allegations in support of her Fourth claim fit squarely within this prohibition, and are "not intertwined or substantially dependent upon consideration of the terms of [the CBA]." *Paige*, 826 F.2d at 863.  Therefore, because the Court held above that plaintiff had alleged sufficient facts to support a section 6310 claim, the Court concludes that plaintiff has adequately pled her Fourth claim for wrongful discharge grounded in the public policy underlying section 6310.

Accordingly, defendants' motion to dismiss plaintiff's Fourth claim is DENIED.

### C.    Plaintiff's Ninth Claim for Intentional Infliction of Emotional Distress

Plaintiff's Ninth claim for IIED alleges that defendants "fired plaintiff . . . without good cause and because she had made complaints regarding safety in violation of Labor Code section 6310." Compl. ¶ 56.  Plaintiff further alleges that "[d]efendants' conduct was outrageous and done with the intention to cause or in reckless disregard of the probability of causing severe emotional distress." *Id.* at ¶ 57.  Defendants argue that this claim is preempted by § 301 of the LMRA.  The Court agrees.

Preemption of IIED claims under § 301 should be analyzed in the same way as any other § 301 preemption claim, by asking "whether the California tort as applied here confers nonnegotiable state-law rights on employers or employees independent of any rights established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of [the CBA]." *See Miller*, 850 F.2d at 545-46.

Here, evaluation of the IIED claim requires construction of the terms in the CBA and is therefore preempted by § 301. *See Miller*, 850 F.2d at 551.  To establish a claim for IIED under California law, a plaintiff must establish, among other things, "outrageous conduct by the defendant" that caused "severe or extreme emotional distress." *See Galvez v. Kuhn*, 933 F.2d 773, 779 (9th Cir. 1991) (quoting *Trerice v. Blue Cross of California*, 209 Cal.App.3d 878, 883 (1989)).  California courts have interpreted outrageous conduct to be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1150 (9th Cir. 1988) (citing

*Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579 593 (1979)).  However, conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community" is not an independent, nonnegotiable standard of behavior.  Rather, it depends upon the relationship between plaintiff and defendants such that the terms of the CBA are relevant in evaluating the reasonableness or outrageousness of defendants' conduct.  *See Miller*, 850 F.2d at 550 (dismissing IIED claim as preempted under § 301).  For example, "behavior that would not be outrageous between unrelated individuals might be outrageous between an employer and an employee in some circumstances." *Id.* at 551 (internal citations omitted).  As the Ninth Circuit recognized in *Miller*, the Court cannot assume that behavior violating an antidiscrimination statute – here, plaintiff's asserted section 6310 claim – is automatically outrageous for purposes of an emotional distress claim.  *See id.*  Plaintiff has not alleged any facts to suggest that defendants purported wrongful conduct consisted of anything more than a discriminatory and retaliatory discharge.  Therefore, because plaintiff's IIED claim requires consideration of the reasonableness of defendants' behavior in terminating plaintiff, which in turn depends on whether that behavior violated the CBA, the claim is preempted.

Accordingly, defendants' motion to dismiss plaintiff's Ninth claim is GRANTED, and the claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion to dismiss.

(1) Plaintiff's Second, Third, Fifth, Sixth, Seventh, and Ninth claims are DISMISSED WITH PREJUDICE.

(2) Plaintiff's First claim is DISMISSED WITH LEAVE TO AMEND.

(3) Defendants' motion to dismiss plaintiff's Fourth and Eighth claims is DENIED.

**IT IS SO ORDERED.**

Dated: April 23, 2013

_____
SUSAN ILLSTON
United States District Judge

12